**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**DARON C. HOLMES,**

      **Petitioner,**

**vs.**

                               **CASE NO. 4:08cv507-MP/WCS**

**WALTER McNEIL,**

      **Respondent.**

_____/


## REPORT AND RECOMMENDATION

      This is a petition for writ of habeas corpus filed by Daron C. Holmes pursuant to

28 U.S.C. § 2254. Doc. 1. Petitioner challenges his conviction for sale or possession

with intent to sell cocaine within 1,000 feet of a school in the Circuit Court of the Second

Judicial Circuit, in and for Jefferson County, Florida, case number 01-352-CF. *Id.*

Respondent filed an answer and the record in paper form. Doc. 12. References herein

to exhibits are to the record in paper form. Petitioner filed a traverse. Doc. 13.

Respondent concedes that the petition was timely filed. Doc. 12, p. 8.

      The Eleventh Circuit recently entered an order on Petitioner's petition for writ of

mandamus to this court, seeking a prompt ruling. Doc. 20. Although this petition is not

the next one in line, it was only a few behind others. I have taken this petition up immediately so that the Eleventh Circuit will not be required to further consider Petitioner's petition there.

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court. 28 U.S.C. §§ 2254(b)(1), (c)." O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999). To properly exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented to the state courts." Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (*citing* Picard). However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).[1]

While it is not necessary that the petitioner cite "book and verse" of the Constitution, the state court must be alerted to the fact that a federal constitutional claim is raised. Duncan, 513 U.S. at 365-366, 115 S.Ct. at 888 (citations omitted); *see also* McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005) (holding that a petitioner must "do more than scatter some makeshift needles in the haystack of the state court record") (citations omitted). The petitioner also "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the

---

[1] If no constitutional claims are raised, then §2254 is inapplicable and the exhaustion inquiry is irrelevant. Engle v. Isaac, 456 U.S. 107, 120, n. 19, 102 S.Ct. 1558, 1567, n. 19, 71 L.Ed.2d 783 (1982).

State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999); Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (applying this one complete round requirement to state collateral review process as well as direct appeal).

If a claim was not fairly presented but is procedurally barred from further state court review,[2] Petitioner must demonstrate cause for the default and actual prejudice, *or* demonstrate that the constitutional violation has probably resulted in conviction of an innocent person. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).

For a claim which was fairly presented and adjudicated on the merits by the state court, the state court's factual determinations are presumed correct unless the Petitioner rebuts the presumption by clear and convincing evidence. § 2254(e)(1); Fugate v. Head, 261 F.3d 1206, 1215 and n. 11 (11th Cir. 2001) (citation omitted). Section 2254(e)(2) provides that:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
>   (A) the claim relies on –
>
>       (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

---

[2] Procedurally defaulted claims are considered technically exhausted because state court remedies no longer remain "available." The court therefore refers to "fairly presented" claims as having been *properly* exhausted, to distinguish them from claims exhausted by procedural default. *See* O'Sullivan, 526 U.S. at 848, 119 S.Ct. at 1734.

      (ii) a factual predicate that could not have been previously
      discovered through the exercise of due diligence; and

      (B) the facts underlying the claim would be sufficient to establish by clear
and convincing evidence that but for constitutional error, no reasonable
factfinder would have found the applicant guilty of the underlying offense.

As explained by the Supreme Court, "[i]If there has been no lack of diligence at

the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the

facts under § 2254(e)(2)'s opening clause, and he will be excused from showing

compliance with the balance of the subsection's requirements." (Michael) Williams v.

Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479, 1491, 146 L.Ed.2d 435 (2000).

> For state courts to have their rightful opportunity to adjudicate federal
> rights, the prisoner must be diligent in developing the record and
> presenting, if possible, all claims of constitutional error. If the prisoner fails
> to do so, *himself or herself contributing to the absence of a full and fair*
> *adjudication in state court*, § 2254(e)(2) prohibits an evidentiary hearing to
> develop the relevant claims in federal court, unless the statute's other
> stringent requirements are met. *Federal courts sitting in habeas are not*
> *an alternative forum for trying facts and issues which a prisoner made*
> *insufficient effort to pursue in state proceedings.* Yet comity is not served
> by saying a prisoner "has failed to develop the factual basis of a claim"
> where he was unable to develop his claim in state court despite diligent
> effort.

529 U.S. at 437, 120 S.Ct. at 1491 (emphasis added).

Further, a petitioner is entitled to federal habeas relief only if the state court's

adjudication of the merits of the federal claim:

      (1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

      (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding.

§ 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389

(2000); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125

(2000).

> The "contrary to" clause in § 2254(d)(1) "suggests that the state court's decision must be substantially different" from the relevant Supreme Court precedent. Although a state court's decision that "applies a rule that contradicts the governing Supreme Court law is "contrary," a state court decision that applied "the correct legal rule" based on Supreme Court law to the facts of the petitioner's case would not fit within the "contrary to" clause even if the federal court might have reached a different result relying on the same law. In evaluating the "'unreasonable application' inquiry," the federal court should consider whether the state court's application of the law was "objectively unreasonable" and should not apply the subjective "'all reasonable jurists'" standard. The Supreme Court clarified that, under 28 U.S.C. § 2254(d)(1), the federal court may not issue the writ unless it finds that the state court applied Supreme Court law unreasonably.

<u>Fugate</u>, 261 F.3d at 1216 (summarizing the conclusions in <u>Williams</u>, citations omitted).

For an ineffectiveness of counsel claim, the "clearly established" standard is set

forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Under <u>Strickland</u>, "[a] convicted defendant making a claim of ineffective assistance of

counsel must identify the acts or omissions of counsel that are alleged not to have been

the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In

determining whether counsel gave adequate assistance, "counsel is strongly presumed

to have rendered adequate assistance and made all significant decisions in the exercise

of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. Petitioner

has a heavy burden, as he must show that "no competent counsel would have taken the

action that his counsel did take." <u>Fugate</u>, 261 F.3d at 1217 (citation omitted). There are

no rigid requirements or absolute duty to investigate a particular line of defense, and "more is not always better."  *Id.* (citations omitted).

Even if Petitioner can show deficient performance, he must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

While <u>Strickland</u> explained the performance and prejudice prongs of analysis, the court need not address them in that order or even address both, as failure to demonstrate either step of <u>Strickland</u> is dispositive of the claim against the petitioner. 466 U.S. at 697, 104 S.Ct. at 2069.

**Ground one**

Petitioner contends that his attorney was ineffective for failing to depose the confidential informant, Eric Schmeil, and the eye witness, Derrick Johnson.  Doc. 1, p. 5B (p. 8 on ECF, the electronic case filing system).  Petitioner contends that his attorney did not know what Schmeil would say at trial, and asserts that Derrick Johnson would have testified that neither he nor Petitioner possessed or sold illegal drugs to the confidential informant.  *Id.*

Respondent argues that the claim concerning Schmeil was never presented to Florida courts and is procedurally defaulted.  Doc. 12, p. 14.  Respondent is correct. Petitioner's Rule 3.850 motions only complained about the investigation concerning Derrick Johnson.  Ex. Q, R. 7 (first motion); Ex X, R. 3-8 (second motion).  Schmeil was not mentioned.  Ex. Q, R. 1-26; Ex. X, R 1-16.  The claim is procedurally defaulted.  *See*

Jackson v. Herring, 42 F.3d 1350, 1355 (11th Cir. 1995) (consistent with the fair

presentation requirement, "habeas petitioners generally may not raise ineffective

assistance of counsel claims except on grounds specifically presented to the state

courts."), *citing* Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992) (other

citation omitted); Grubbs v. Singletary, 120 F.3d 1174, 1178 (11th Cir. 1997), *cert.*

*denied*, 523 U.S. 1060 (1998) (petitioner did not present the specific instances of

ineffective assistance he presented by § 2254 petition, and would be precluded from

presenting them by state law in a successive Rule 3.850 motion, and therefore had to

demonstrate cause and prejudice) (citations omitted).  Petitioner has not shown cause

for this default or prejudice to the outcome.  Doc. 13.  The court cannot reach the merits

of this claim.

Respondent concedes that Petitioner did exhaust state court remedies as to the

claim that his attorney was ineffective in failing to depose and use Derrick Johnson as a

witness, and addresses the merits.  Doc. 12, p. 15.  The trial court denied this claim,

reasoning:

> As stated in this Court's denial of the prior post-conviction motion,
> Defendant fails to demonstrate a reasonable probability that the testimony
> [of Derrick Johnson] would have changed the outcome of the trial in the
> face of evidence to the contrary.  The record evidences credible testimony
> from the State, including that of Sgt. Hayes, who testified he listened to
> audio and viewed videotape of Defendant selling crack cocaine; and the
> police informant, who testified, regarding the controlled buy and identified
> Defendant on the videotape.  (Attachment B at 28-32, 49, 65-72.)
> Furthermore, calling a witness to testify that Defendant did not, in fact, sell
> crack cocaine would have severely undermined his defense of
> entrapment.  Counsel cannot be deemed ineffective for failing to interview
> or call a witness whose sole purpose would have been to sabotage his
> entire case strategy.

Ex. X, R. 23.

The trial court's ruling was fully supported by the attached copies of testimony from the trial. Ex. X, Attachment B, R. 33-46. Petitioner's drug sale was recorded for all posterity on audio and videotape, and the confidential informant, Schmiel, confirmed the details of the drug sale and identified Petitioner. Further, as will be discussed ahead, Petitioner's central defense was entrapment. Even now, Petitioner has not come forward with specific testimony that Derrick Johnson might have given that would have helped the defense. Consequently, Petitioner has not shown that the state court's ruling has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground two**

Petitioner contends that his attorney was ineffective for failing to invoke the sequestration rule to exclude Eric Schmiel from trial. Doc. 1, p. 5C (p. 10 on ECF). Petitioner asserts that Schmiel could not identify him in a unrelated case. *Id.* Petitioner asserts that Schmiel was not identified as a prosecution witness until after the rule was invoked. *Id.* Petitioner asserts that Schmiel heard Officer Hayes identify Petitioner during trial, and this, he claims, irreparably damaged his defense. *Id.*, p. 11.

Respondent addresses the merits of this claim. Doc. 12, p. 16. The trial court denied this claim. The court noted that Schmiel had in fact been in the courtroom when Officer Hayes testified,[3] but found that Petitioner had not shown prejudice to the outcome. Ex. X, R. 24. The court found that Petitioner had not shown "how the

---

[3] Petitioner's attorney initially forgot to invoke the rule, and did not do so until Officer Hayes had already provided some testimony. Ex. D (trial transcript), p. 34.

informant's testimony differed from his prior written statements or deposition testimony as a result of hearing Sgt. Hayes' testimony." *Id.*  The court said:

> First, Defendant alleges the informant only knew about the duties, purposes, and limitations of a confidential informant ("C.I.") because he was able to hear Sgt. Hayes' testimony.  At trial, the informant testified that he was instructed to drive around until someone flagged him down or asked him to pull over, but that he did not entice or lure anyone. (Attachment B at 65.)  The topics of instruction and procedure were not raised at the informant's deposition and therefore no inconsistent statement exists.  As to Defendant's claim that the informant could not have identified him without first seeing Sgt. Hayes identify him, Defendant fails to adequately establish that the informant's deposition testimony indicated he was not able to make identification.  Defendant's name is never mentioned during the deposition (which spanned over several cases in which the informant assisted law enforcement officers), and the informant never stated he could not identify him.  He only states that he probably would not be able to identify any particular person by viewing videotape of the sales.  (Attachment D.)  This is not inconsistent with his in-court identification of Defendant, and therefore Defendant is unable to satisfy the prejudice prong under <u>Strickland</u>.

Ex. X, R. 24-25.

The finding that Schmiel testified at trial that he was instructed to drive around until someone flagged him down, and the he had did nothing to entice anyone, is supported by the record cited by the Rule 3.850 court.  Ex. X, Attachment B, R. 39. Schmiel testified that his role was to "purchase drugs from anybody who was willing to sell drugs."  Ex. D (trial transcript), p. 62.  Schmiel testified that after his meeting with Officer Hayes, he "would drive downtown and ride around until someone flagged me down."  *Id.*, p. 65.  Schmiel said he waited until someone waved at him or asked him to pull over, and that he "didn't approach anybody."  *Id.*

The second finding is also supported by the record.  Schmiel said in his deposition that he made a number of drug buys for law enforcement, and said that he

probably could not be able to identify a particular person by looking at the videotape

from the particular transaction. Ex. X, Attachment D, R. 49. He did not name Petitioner

or say he could not specifically identify him from the videotape in this case or in any

"unrelated" case. Further, Officer Hayes squarely identified Petitioner as the person

who sold drugs to Schmiel after looking at the videotape. Ex. D, p. 30. Officer Hayes

said he knew Petitioner as someone who lives in Jefferson County, Florida. *Id.* Officer

Hayes said that Schmiel was shown photographs of Petitioner and Schmiel positively

identified Petitioner before trial. *Id.*, p. 31. Schmiel's identification of Petitioner was

never in serious doubt. Petitioner has not shown that the state court's ruling has

"resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United

States." § 2254(d)(1).

**Ground three**

Petitioner asserts that his attorney was ineffective in the way he handled a

comment made by a prospective juror. Doc. 1, p. 5D (p. 12 on ECF). Petitioner asserts

that when the prospective juror was asked whether he knew Petitioner, he said, "other

than when he [Petitioner] was busted in 1991 for drugs at Thompson Exxon gas station,

I am unfamiliar with him." *Id.* Petitioner contends that his attorney should have moved

to strike the panel. *Id.*

This claim was not raised by Petitioner until his second Rule 3.850 motion. Ex.

X, R. 14. The trial court denied the claim, finding that it should have been raised on

direct appeal. *Id.*, R. 25. This was not an adequate state law ground for disposition of

the claim. "A claim of trial court error generally can be raised on direct appeal but not in

a rule 3.850 motion, and a claim of ineffectiveness generally can be raised in a rule 3.850 motion but not on direct appeal." Bruno v. State, 807 So. 2d 55, 63 (Fla. 2001) (footnotes omitted, citing FLA. R.CRIM. P. 3.850(c), which provides: "This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.").

But the trial court also denied the claim because it should have been raised in the first Rule 3.850 motion, citing Remeta v. State, 710 So. 2d 543 (Fla. 1998). The court noted that although Petitioner had argued that the successive claim was permitted as newly discovered evidence, the court found implicitly that Petitioner could have known of this claim by the exercise of due diligence. Id., R. 25-26. The court also held that the claim was without merit because the evidence of guilt was so strong. Id., R. 26.

FLA. R. CRIM. P. 3.850(f) provides:

**Successive Motions**. A second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, *if new and different grounds are alleged, the judge finds that the failure of the movant or the attorney to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules*.

(Emphasis added). The court, therefore, denied the claim on an adequate and independent state ground. Where the defaulted claim was presented to a state court and the state court's decision rests on the independent and adequate state ground of procedural default, the federal courts will not address the merits absent a showing of cause and prejudice for the default. Coleman v. Thompson, *supra*, 501 U.S. at 730-732, 111 S.Ct. at 2554-2555. Procedural default exists even though the state court

alternatively issued a ruling on the merits.[4]  Petitioner has not shown cause or prejudice

for this procedural default, and this court cannot reach the merits of ground three.

**Ground four**

Petitioner contends that he did not consent to the strategy of presenting the

defense of entrapment.  Doc. 1, p. 5E (p. 15 on ECF).  He argues that his attorney was

ineffective because, in the employment of that defense, he conceded Petitioner's "guilt"

without Petitioner's consent.  *Id.*

The trial court denied this claim without a hearing when ruling upon the first Rule

3.850 motion, finding that it was unsupported in the record.  The court reasoned:

> While it is true that at the beginning of the trial, counsel indicated
> Defendant did not want him to pursue the entrapment defense, the Court
> allowed Defendant to speak at length on the subject and Defendant did
> not state he was opposed to the entrapment defense.  *Tr. trans., pp. 5-11.*
> Additionally, Defendant never objected once during counsel's closing
> argument and rebuttal, in which counsel extensively described the defense
> theory of entrapment.  *Tr. trans., pp 113-124 & 131-135.*  Nor did he object
> during the initial reading of the entrapment jury instruction, or during the
> rereading of the instruction during deliberations.  *Tr. trans., pp. 138-140 &
> 148-151.*  Most importantly, during the trial, counsel discussed with
> Defendant off the record whether he wanted to testify, and a few minutes
> later counsel stated to the Court that Defendant was not going to testify
> and had "decided to ask me to request the entrapment instruction," to
> which Defendant said nothing.  *Tr. trans., pp. 103-104.*
>
> Because the record shows that Defendant allowed the entrapment
> defense to proceed, Defendant's argument that counsel conceded his guilt
> without permission at trial by using the entrapment defense is irrelevant.
> The Court would note that the case Defendant cities [sic] in support of this

---

[4] "Moreover, a state court need not fear reaching the merits of a federal claim in
an alternative holding.  By its very definition, the adequate and independent state
ground doctrine requires the federal court to honor a state holding that is a sufficient
basis for the state court's judgment, even when the state court also relies on federal
law."  Harris v. Reed, 489 U.S. 255, 264, n. 10, 109 S.Ct. 1038, 1044, n. 10, 103
L.Ed.2d 308 (1989).

argument, <u>Nixon v. State</u>, is distinguishable in that Nixon's trial counsel
directly and explicitly conceded his client's guilt without his client's
permission by pursuing a guilty verdict in an attempt to obtain a life
sentence rather than the death penalty. <u>Nixon v. State</u>, 857 So. 2d 172
(Fla. 2003). . . .

Ex. Q, R. 71-72.

The state court's factual findings are supported by the trial record cited.

Petitioner's attorney advised the court before trial that Petitioner did not wish to pursue

the entrapment defense. Ex. D (trial transcript), p. 5. Petitioner then spoke, explaining

his view of entrapment. *Id.*, p. 6. He said:

> [I]f a person tricks you to walk somewhere because he is working for law
> enforcement and you go get him something he has you arrested, that is
> entrapment. That's just like putting a man in jail for nothing.
>
> If you walk away and just speak with a person, but you didn't know what
> he is doing or what he ain't doing, whatever, but you ain't participated in
> nothing that he did, but he just accused you of a crime, that is entrapment.

*Id.* Counsel said he thought that Petitioner did not understand entrapment, and he did

not know what more he could do to "make him understand." *Id.* Petitioner did not say

that he did not want his lawyer to pursue the defense of entrapment.

Further, after Petitioner's lawyer argued entrapment in closing, Petitioner did not

voice an objection, and he did not object to the jury instructions on entrapment. *Id.*, pp.

113-124, 131-135, 138-140. Petitioner did not object when the entrapment was reread

to the jury at their request. *Id.*, pp. 148-151. Finally, after conferring with counsel,

Petitioner's counsel told the court that Petitioner did not wish to testify and he wanted

the court to instruct the jury as to the entrapment defense. *Id.*, p. 104. Petitioner again

did not object.

Thus, that is the state of the factual record. The trial court's factual findings have not been shown to be inaccurate by clear and convincing evidence as required by § 2254(e)(1).

Finally, the <u>Nixon</u> went on to the United States Supreme Court and there the Court ruled that counsel's concession of guilt at the outset of a capital case without the consent of his client was not ineffective assistance of counsel because it was a reasonable strategy to try to avoid the death penalty. <u>Florida v. Nixon</u>, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). Petitioner has not shown that the state trial court's ruling on this federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground five**

Petitioner contends that his attorney was ineffective for failing to move to "dismiss" (suppress) the testimony of confidential informant Schmeil. Doc. 1, p. 5F.[5] The basis for suppression, apparently, is that Schmeil received "a substantial fee" for his role and was tainted by the failure to sequester Schmeil (ground two). *Id*.

Ground two regarding the rule of sequestration is without merit. Therefore, the only aspect of this claim still potentially viable concerns the money Schmeil received for his work. The state court rejected this claim as raised in the first Rule 3.850 motion, finding that Petitioner's attorney thoroughly cross-examined Schmeil. Ex. Q, R. 73, citing the trial transcript, pp. 88-95. Petitioner has not shown by clear and convincing

---

[5] This page was not properly scanned into ECF. By separate order I have asked the clerk to scan it and associate it with document. 1.

evidence that the trial court's finding of fact was erroneous. Indeed, Petitioner's lawyer did a good job of revealing to the jury the fact that Schmeil was out of work and payment for working as a confidential informant was his only means of employment. Ex. D, pp. 88-89. Schmeil admitted that although he characterized the pay as "gas money," it was sometimes a lot more. *Id.*, p. 93. Counsel established that Schmeil was paid $50 per day, but not by arrests, and he had the potential of making thousands of dollars. *Id.*. pp. 92-93. Thus, counsel thoroughly established Schmeil's pecuniary interest.

Further, Petitioner's attorney did not have a claim under Florida law to have the charges dismissed or the evidence excluded. It is a violation of due process under Florida law for an informant's pay to be contingent upon his cooperation and testimony in a criminal prosecution where that testimony is critical to a successful prosecution. State v. Glosson, 462 So. 2d 1082 (Fla. 1985), *affirming*, State v. Glosson, 441 So. 2d 1178 (Fla. 1st DCA 1983) (noting that the informant was to receive 10% of any civil forfeiture as a consequence of successful criminal prosecution, and would be paid only if he testified and cooperated, and the testimony was critical to conviction). The case at bar is different. There is no evidence that Schmeil's pay was contingent upon his testimony or conviction of Petitioner. Schmeil was paid by the day. Since there was no claim to support dismissal of the charges under Florida law, Petitioner's attorney was not ineffective for not moving to dismiss on those grounds. Black v. State, 41 So. 3d 423, 424-425 (Fla. 1st DCA 2010) ("Although the informant was paid to make drug buys for the police and testify at trial, nothing in the record shows the payments were contingent on Appellant's conviction and that the informant had a pecuniary interest in

the outcome of the case," and therefore counsel was not ineffective for failing to move

to dismiss on those grounds).  Consequently, Petitioner has not shown that the state

trial court's ruling on this federal claim has "resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground six**

Petitioner contends that he had ineffective assistance of counsel with respect to

Officer Hayes's testimony that the drug sale was within 1,000 feet of a school.  Doc. 1,

p. 5G (p. 17 on ECF).  Petitioner contends that Officer Hayes was not a qualified expert

to testify as to this measurement.  *Id.*

Respondent argues that this specific ineffectiveness claim was never presented

to the state courts and is procedurally defaulted.  Doc. 12, p. 22.  Respondent is correct.

The only reference in state court to a measurement of the distance to a school was the

claim that counsel was ineffective for failing to measure whether the distance was in fact

1,000 feet or less.  Ex. Q, R. 8.  Petitioner did not claim that counsel was ineffective with

respect to any testimony given by Officer Hayes as to the distance.  Petitioner has not

shown cause or prejudice for this procedural default, and the court cannot reach the

merits of the claim.

**Certificate of Appealability**

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he

district court must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant," and if a certificate is issued "the court must state the specific

issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of  new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Daron C. Holmes challenging conviction for sale or possession with intent to sell cocaine within 1,000 feet of a school in the Circuit Court of the Second Judicial Circuit, in and for Jefferson County, Florida, case number, be **DENIED WITH PREJUDICE** and that a certificate of appealability be **DENIED** pursuant to § 2254 Rule 11(a).

**IN CHAMBERS** at Tallahassee, Florida, on December 13, 2010.

**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 4:08cv507-MP/WCS

## <u>NOTICE TO THE PARTIES</u>

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.